APEX BINDING CORP., Plaintiff, *v.* MAURICE L. RELKIN, Defendant.

Supreme Court, Special Term, New York County, April 28, 1950.

*Rapaport Brothers* for defendant.

*Max J. Pershan* for plaintiff.

HAMMER, J. The plaintiff is a tenant of premises owned by the defendant. In October, 1947, defendant agreed to rent a floor for commercial purposes in premises at 70–72 Wooster Street, New York City. At that time and since, the premises were subject to the Commercial Rent Law (see L. 1945, ch. 3, and amendments thereof). According to the complaint, and for the purposes of this motion, it must be conceded that the emergency rent is a sum much less than $416.67 per month; that the landlord refused to rent the premises at the emergency rent; whereupon the landlord and the plaintiff entered into an agreement, pursuant to which they went through a so-called arbitration proceeding in seeming compliance with the provisions of the statute. Papers were prepared and, subsequently, papers were signed which purported to be an arbitration agreement, the oath of arbitration, the arbitrator's report, and a lease which fixed the rental at the sum of $5,000 per annum. There was also prepared an agreement that the lease was not to become effective unless an order was entered by the Supreme Court confirming the arbitration and arbitration award. Documents were prepared to effect this, and thereafter an order was signed on November 3, 1947, by HON. LLOYD CHURCH, a Justice of this court, confirming the award and the order was duly filed in the office of the Clerk of the County of New York.

It is now asserted that the agreement to arbitrate, the arbitration and the award were sham and a pretense to evade the provisions of the emergency rent law and that all of the proceedings were and are void; that the plaintiff went into possession of the premises on November 1, 1947, and has remained there ever since. The prayer for relief demands that the arbitration proceedings and the award and the order confirming the same be vacated, and that the emergency rent be fixed and determined by the court, and that plaintiff have judgment against the defendant for any sums paid in excess of the emergency rent.

The defendant moves to dismiss the complaint pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice, on the ground that it appears on the face that the complaint does not state facts sufficient to constitute a cause of action and, pursuant

to subdivision 5 of rule 107 of the Rules of Civil Practice, on the ground that there is an existing final judgment or decree determining the same cause of action between the parties. It is now settled by a decision of the Court of Appeals in *Matter of Heidelberger* (*Cooper*), (300 N. Y. 502, decided Nov. 17, 1949) that an application to vacate or set aside an award of an arbitrator, made three months after the award has been delivered or filed, cannot be maintained (Civ. Prac. Act, § 1463). In that action, on facts similar to the facts presented in this complaint, the Court of Appeals reversed the Appellate Division and held that the award could not be vacated.

The question remains as to whether or not, in a plenary action in a court of equity, the plaintiff can be heard to assert that which is forbidden to him in a direct attack in the arbitration proceeding. I am of the opinion that he cannot. When he entered into the agreement to arbitrate, the plaintiff took a position which estops him from asserting in any court, a state of facts different from that which was presented in the original proceeding. As long ago as 1762, Lord MANSFIELD, in *Montefiori* v. *Montefiori* (1 Black. W. 363, 364) denied relief in an action where a brother sued another brother to compel the return of a promissory note which the plaintiff had given him for the purpose of creating an impression of defendant's wealth and thus hasten the consummation of a marriage, saying: "The law is, that where, upon proposals of marriage, third persons represent anything material, in a light different from the truth, even though it be by collusion with the husband, they shall be bound to make good the thing in the manner in which they represented it. It shall be, as represented to be."

It was further held by Lord DENMAN in the leading case of *Pickard* v. *Sears* (6 Ad. & El. 469, 474 [1837]): "the rule of law is clear, that, where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time; and the plaintiff, in this case, might have parted with his interest in the property by verbal gift or sale, * * *. And we think his conduct, in standing by and giving a kind of sanction to the proceedings under the execution, was a fact of such a nature * * *."

It has been held in the leading work on equitable estoppel, (1 Herman on Commentaries on the Law of Estoppel and Res Judicata, p. 6 [1886], cited with approval in 2 C. J., p. 1148, note

22) : '' Nobody ought to be estopped from averring the truth or asserting a just demand, unless by his acts, or words, or neglect, his now averring the truth or asserting the demand would work some wrong to some other person who has been induced to do something, or to abstain from doing something by reason of what he had said or done, or omitted to say or do.''

Similarly, it has been held that where one invokes the jurisdiction of the court, though that court is without jurisdiction, he will be estopped from denying that there was jurisdiction (*Krause* v. *Krause,* 282 N. Y. 355) ; and in the case of *Houghton* v. *Thomas* (220 App. Div. 415, affd. 248 N. Y. 523), an attorney, who testified against his former partners and denied the existence of an agreement and that any moneys were due, was estopped from asserting a claim against the partnership for his share of the profits after the jury had found that such an agreement had existed and an amount was recovered thereunder. There the plaintiff, who had testified that neither he nor his partners were entitled to recover any sum, attempted later to contend that because the jury found in his partners' favor, he was entitled to one third of the fee recovered. The court stated (p. 423) : '' We think defendant Mack is estopped from a recovery of any judgment in this counterclaim, and that he comes within the rule that a claim made *or position taken in a former action or judicial proceeding will estop the party from making any inconsistent claim or taking a conflicting position in a subsequent action or judicial proceeding* to the prejudice of the adverse party. We conclude that he should not be permitted to assert his counterclaim under any technical rule of law when he has so conducted himself that it would be contrary to equity to permit him to profit at plaintiffs' or defendant Thomas' expense.'' (Italics supplied.)

I can see no difference in the plaintiff's position. The fraud, if any, was intrinsic and not extrinsic (see *Crouse* v. *McVickar,* 207 N. Y. 213, and *Ross* v. *Preston,* 292 N. Y. 433; see, also, *David* v. *Fayman,* 273 App. Div. 408, affd. 298 N. Y. 669).

As was said by SETTLE, J., in *Royster* v. *Heck* (29 Ky. L. Rep. 634, 638) : '' One cannot blow hot and cold; this is a trite expression of the maxim allegans contraria non est audiendus; he is not to be heard who alleges things contrary to each other. This fundamental principle is of wide application in the law of equitable estoppel. He can not treat a contract as subsisting, and afterwards avoid it. (Herman on Estoppel, 1039–1049.''

Indeed, the question posed by Chancellor KENT, in 1817, applies to this case when he said : '' Can he be entitled to credit,

when he comes now and declares that he acted the hypocrite in all those transactions? It is one of the maxims of the common law (4 *Co. Inst.* 299) that *allegans suam turpitudinem non est audiendus.*" (*Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339, 350.)

It is true that there have heretofore been decisions, prior to the decision in the *Heidelberg* case (*supra*), where it has been held that a plenary action would lie in this class or suit. I am of the opinion that the *Heidelberg* decision makes the re-examination necessary, and so the Appellate Division has indicated in *Bernsley* v. *Reiss* (276 App. Div. 827), where they left open the question as to whether or not such an action will be barred.

I, therefore, reach the conclusion that such an action is barred after the time that the plaintiff herein could have moved in the arbitration proceeding, and he cannot now be heard in a collateral action to attack the validity of an arbitration of which he was a knowing party. There was no duress in law, and the only basis of such an attack could be in fraud. Being a party to the fraud precludes him from now moving to set it aside.

The motion is granted and the complaint is dismissed under rules 106 and 107 of the Rules of Civil Practice. Settle order.