LINDA RHYNE, Complainant, *v.* BELDON R. KATLEMAN, Defendant.

Court of Special Sessions of City of New York, Borough of Manhattan, July 12, 1954.

*Jackson, Nash, Brophy, Barringer & Brooks* for defendant.

*Morris H. Halpern* for complainant.

*Adrian P. Burke, Corporation Counsel, amicus curiæ.*

DAVIDSON, J.  This is a motion by the defendant for an order vacating and setting aside a bench warrant issued in the above case on March 24, 1954, and dismissing the proceeding herein on the ground that on June 30, 1953, a compromise agreement between the same parties hereto was confirmed and approved by the Third District Judicial Court, Lander County, Nevada. That agreement was confirmed and approved pursuant to section 3430 of the Nevada Compiled Laws of 1929, which provides in part that: " The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support of the child."

The foregoing statute of Nevada, the effect of which is to bar other support remedies of the mother or child is similar

to section 121 of the New York Domestic Relations Law and section 63 of the New York City Criminal Courts Act. That similarity is due to the fact that article VIII of the New York State Domestic Relations Law (paternity proceedings) and the Nevada statute of paternity proceedings are based upon the proposed Uniform Illegitimacy Act.

For example, section 121 of the New York State Domestic Relations Law provides in part: "The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child."

And section 63 of the New York City Criminal Courts Act provides in part: "The complete performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for support."

According, therefore, to the paternity statutes of both New York and Nevada an agreement to settle a paternity case, when approved by the court, is binding and effective and if the defendant complies with the terms of that agreement other support remedies of mother or child are barred.

The facts in this case are undisputed and decision herein turns upon the legal effect of the order of the Nevada court, dated June 30, 1953, which confirmed and approved the agreement dated May 27, 1953. The agreement dated May 27, 1953, provided, in its financial aspect as follows: The complainant was to receive the sum of $10,000, in full settlement of all support claims by her or the child; and the sum of $5,000 was to be paid to the complainant's attorneys as counsel fees. The Judge of the Third Judicial Court in Nevada on June 30, 1953, adjudged and determined that such a settlement constituted an adequate provision for the child; that the same was fully secured by payment; and thereupon entered an order barring any other support remedies by mother or child.

The complainant does not dispute the fact that she did receive the sum of $10,000, on or about June 30, 1953. Nevertheless, about three months later, on or about September 22, 1953, a verified complaint seeking an adjudication of paternity and additional support from the defendant was filed in this court and a summons was issued based upon said complaint. From time to time the summons was extended and finally on or about March 24, 1954, a bench warrant was issued for the defendant's arrest.

On May 11, 1954, the defendant brought on the present motion seeking the vacation of the warrant and dismissing the pro-

ceeding herein upon the ground that the court-approved settlement in the State of Nevada dated June 30, 1953, was binding and had the effect, by virtue of the appropriate Nevada statute, of barring this present paternity proceeding. Argument on this motion was heard on May 11, 1954, and at the conclusion thereof the execution of the bench warrant was temporarily stayed pending the decision on this motion.

As already stated, there is no conflict or dispute as to the fact that the complainant did receive the sum of $10,000 pursuant to the agreement dated May 27, 1953. There remains therefore exclusively a question of law, namely, the legal effect upon this paternity proceeding of the court-approved settlement in the State of Nevada dated June 30, 1953.

It must be clear at this point that the instant paternity proceeding is a so-called private proceeding and is brought directly to the court by the complainant without any intervention of the commissioner of welfare. This court deems it necessary to emphasize this point because if the instant proceeding had been commenced by the commissioner of welfare on the theory or the likelihood that the child would be a public charge the court-approved settlement in Nevada dated June 30, 1953, would not have the effect of barring such a proceeding by the welfare commissioner at any time within sixteen years from the date of birth of the child (*Matter of Bancroft* v. *Court of Special Sessions,* 278 App. Div. 141, affd. 303 N. Y. 728). This proceeding having been commenced, not by the welfare commissioner, but by the mother herself, the question is whether she has a right to bring this proceeding in view of the agreement dated May 27, 1953, to which she was a party, and the Nevada court's approval of that agreement dated June 30, 1953.

In *Matter of Bancroft* v. *Court of Special Sessions* (278 App. Div. 141, *supra*), one Bancroft petitioned the Supreme Court, New York County, for an order of prohibition restraining the Court of Special Sessions from prosecuting a paternity proceeding instituted by the department of welfare. His petition for an order of prohibition was based on the fact that the County Judge of Chautauqua County on May 21, 1948, approved a settlement of that particular paternity case for the sum of $1,500. In an opinion divided two to three the Appellate Division, First Department, upheld the right of the welfare commissioner to bring suit but was careful to point out (p. 143): '' We hold that  *  *  *  the section in question bars other remedies ' of the mother or child for the support and education of the child '.''

That decision of the Appellate Division was unanimously affirmed by the Court of Appeals (303 N. Y. 728).

Thus, it has been decided by the Appellate Division in this department and affirmed by the Court of Appeals that the legal effect of a court-approved compromise agreement is binding and that it acts as a bar to other support proceedings for the mother or child.

This court gathers that during the short period from June 30, 1953, to September 22, 1953 (when this paternity proceeding was commenced), complainant has expended the substantial sum of $10,000.

The defendant herein petitioned the Third Judicial Court, Lander County, Nevada, for a judicial approval of the agreement dated May 27, 1953, and submitted that agreement for the scrutiny of that court. That petition, among other things, recited that the defendant was then temporarily residing in Lander County, Nevada, and the agreement, attached to the petition, was executed by the complainant and the defendant. Incidentally, section 3437 of the Nevada statute provides that jurisdiction over such a proceeding is vested in the Nevada District Court of the county in which the alleged father is permanently or temporarily resident.

The petition also recited the date of birth of the complainant's child and requested that a time be set for the hearing of this petition and for an order determining that adequate provision for the child, fully secured, is made by said agreement and that petition requested the court's approval. The court's approval is evident from the order of the court dated June 30, 1953, which after reciting that the complainant appeared in that proceeding by her attorneys and that the said agreement had been examined by the court and that the court was thoroughly familiar with the terms thereof, and the court thereupon made an order approving and confirming the agreement dated May 27, 1953, and determining that adequate provision for the support and education of the child is fully secured by said agreement.

The effect of that order of approval is found in section 3430 of the Nevada Statutes which provides: "The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support of the child."

Court-approved settlements, similar to this court-approved settlement in Nevada, are familiar to this court. In fact, such settlements are regularly scrutinized and approved by this court

and this court regularly, when so approving compromise agreements enters an order barring other support proceedings by mother or child.

If effect is to be given to the parallel statutes of New York and Nevada, barring other support remedies of mother or child upon court approval of a compromise agreement, then complainant should not be permitted to pursue the defendant in other forums to seek additional support.

The dissenting opinion by the Appellate Division, First Department, in *Matter of Bancroft* v. *Court of Special Sessions* (*supra,* pp. 143–144), is peculiarly appropriate. That dissenting opinion stated in part: '' Otherwise there would be little object in section 121, which was evidently enacted to enable a putative father of an illegitimate child to buy his peace according to that procedure. We are not concerned with the wisdom of this statute, and cannot pass upon whether the amount approved in Chautauqua County was sufficient for the support of this child. * * * Otherwise there would be no finality to the approval of such agreements if mother and child moved from one county to another. The construction placed on the statute by the majority would permit the bringing of any number of successive filiation proceedings by the welfare authorities in various cities and counties wherever the infant might be temporarily residing, although compromises had been effectuated in prior proceedings in courts having jurisdiction. This would largely destroy incentive upon the part of putative fathers to enter into such agreements, which the Legislature by enacting the statute evidently considered to be in the public interest.''

Section 1 of article IV of the United States Constitution provides as follows: '' Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.''

Moreover, judgments and judicial proceedings of a sister State must be given the same effect which they have in the State from which they are taken (U. S. Code, tit. 28, § 1738; *Roche* v. *McDonald,* 275 U. S. 449, 451–452; *Davis* v. *Davis,* 305 U. S. 32, 40; *Haddock* v. *Haddock,* 201 U. S. 562, 567).

What is the effect of the court-approved settlement in Nevada dated June 30, 1953? That carries its own answer because section 3430 of the Nevada Laws provides that: '' The performance of the agreement or compromise, when so approved,

shall bar other remedies of the mother or child for the support of the child.''

This court cannot ignore the mandate of the Constitution which requires that it give full faith and credit to the judgments and judicial proceedings of a sister State. And reciprocally this court would expect the courts of Nevada for example to give full faith and credit to a judgment or order of this court approving similarly a compromise agreement of a paternity case.

If for any reason the complainant herein feels aggrieved by the order of the Nevada court dated June 30, 1953, approving the compromise or complains that such an order was or is invalid, improper, or defective, her remedy is to attack said Nevada judgment in the jurisdiction where it was granted. So long as that Nevada judgment remains unassailed and is valid and proper on the face thereof this court will give it full faith and credit as required by the United States Constitution.

The complainant in her opposing memorandum of law raises a number of points which will be briefly referred to. First, the fact that the mother and child were not resident in the State of Nevada at the time of the court's approval of the agreement is by no means fatal to that proceeding for the Nevada statute vests jurisdiction in the District Court of Nevada where the defendant permanently or temporarily resides.

This court disagrees with complainant's contention that the settlement approved by the Nevada court was on behalf of complainant and not her child for she is the mother and natural guardian of her child, and the order of the Nevada court dated June 30, 1953, approved the agreement as constituting '' adequate provision for the support and education of said child.''

As to the wisdom in not allocating a part of said sum of $10,000 expressly for the child, this court will not pass upon particularly in view of the fact that neither the New York nor the Nevada paternity statute establishes a mechanism or procedure for the manner and terms of payment.

The complainant stresses the fact that both in New York and Nevada only the complainant may institute the proceeding whereas it was the defendant himself who petitioned the Nevada court for approval of the agreement. On this point the complainant is in confusion because she fails to draw the distinction between the commencement of a usual paternity proceeding and a petition by a defendant to obtain the court's approval of an agreement already entered into.

The complainant points out that under both the New York and Nevada paternity statutes provision is made for the appointment of a trustee to receive the moneys and account to the court for its disposition annually or more often. In the opinion of this court the provision in both States for the appointment of a trustee applies only to those cases where a filiation order is entered, and payments must be made periodically whether weekly, monthly or otherwise. In such cases a trustee is necessary to keep a check on the payments made so that the court will be in a position to know whether the defendant is or is not in default. No trusteeship is necessary where a settlement is made in one lump sum particularly when paid directly to the mother.

As to the complainant's contention that this settlement was not " fully secured ", in the opinion of this court the requirement that the settlement be " fully secured " is fully met by the direct payment of the sum of $10,000 to the complainant which certainly constitutes full security of payment.

Finally, as to complainant's contention that no part of the sum of $10,000 was allocated to the child, it must be pointed out that in several cases in the Court of Special Sessions of New York City payment in full has been made directly to the mother of the child, and upon such payment this court entered orders barring further proceedings by mother or child.

This complainant apparently alleges that during the brief interval of three months from June 30, 1953, to September 22, 1953, she expended the sum of $10,000 and no part of that sum remains for the child. That being the case, if it is complainant's contention that the Nevada court should have provided against such improvidence on the part of the mother, her remedy is to assail the judgment of the Nevada court in the State of Nevada. Let her there point out to the court its failure to guard against her improvidence.

Also, as previously stated, if at any future time until the child herein shall have reached the age of sixteen years, it shall be or become likely to be a public charge then the commissioner of welfare of the City of New York may institute an appropriate paternity proceeding.

However, in view of the full faith and credit clause of the United States Constitution this court does not see its way clear to refuse to give full faith and credit to the order of the District Court of Nevada dated June 30, 1953. This court therefore holds that the effect of the Nevada order dated June 30, 1953,

in the light of the Nevada statutes does have the effect and force of barring this proceeding by the mother of the child.

By reason of the foregoing, the motion to vacate the bench warrant and dismiss the proceeding is granted without prejudice, however, to the rights of the New York City commissioner of welfare to start suit on behalf of this child at any time up to its sixteenth birthday if said child is or is likely to become a public charge.