Felipe N. Torres, J.
This is a motion made by the petitioner to set aside the dismissal of the petition, and to set the case down for a trial on the issue of paternity. A cross motion has been made by the respondent to dismiss petitioner’s motion on the ground of defective service of the motion papers and insufficiency in law.
Before going into a discussion of the two motions and as a background to the issues raised by them, it will be convenient to review the proceedings heretofore had in the case. On or about December 7, 1962, the petitioner filed in this court a *876 paternity petition in which she alleged in substance that as a result of sexual relations had with the respondent on one occasion, she was then pregnant with a child-, that the respondent was the father of the child; and she prayed for an adjudication of paternity, an order of support, and such other and further relief as was proper under the circumstances. A Bench Avarrant for respondent’s arrest was issued, but before it was executed the parties settled the case by entering into an agreement or compromise pursuant to section 516 of the Family Court Act. The agreement was dated December 18, 1963, and pertinent portions thereof read as follows:
whereas, the Party of the First Part gave birth to a female child out of wedlock on or about the 4th day of July, 1963; and
whereas, the Party of the Second Part does hereby deny the paternity of the said child and his legal liability for the support thereof; and
whereas, the parties hereto desire to enter into an Agreement or compromise with respect to support and education of the child and the expenses of pregnancy, confinement and recovery of the Party of the First Part.
how, therefore, it is agreed as follows:
1. The Party of the Second Part agreed to pay or cause to be paid to Mary Roe the sum of Five Hundred Dollars ($500.00), as and for the necessary expenses incurred or to be incurred by or for the Party of the First Part in connection with her pregnancy, confinement and recovery and as and for expenses for the care and maintenance of said child from the date of its birth to the date of this Agreement.
2. The Party of the Second Part agrees to pay or to cause to be paid to Mary Roe the sum of One Hundred Dollars ($100.00) monthly commencing December 18, 1963, for the support and education of said child until said child reaches the age of twenty-one years. Said monthly payment to be made on the 18th day of each and every calendar month by Robert C. Napier, Esq., 290 Reynolds Arcade Building, Rochester, New York, as agent for the Party of the Second Part and directed to the Party of the First Part at her home address hereinbefore set forth.
3. It is further agreed that in the event that said child shall be legally adopted by anyone, that the Party of the Second Part shall, in that event, pay to the Party of the First Part the sum of One Thousand Dollars ($1,000.00), to defray any legal expense that the Party of the First Part shall incur as a result of the said adoption.
4. The parties respectively consent to the entry by the Family Court of the State of New York of an order of approval in accordance with the terms; of this Agreement; it being mutually understood and agreed that this Agreement shall be of no force or effect unless or until approved by that court or by another court of competent jurisdiction.
5. The parties mutually agree that if the Party of the Second Part shall default in the due performance of the terms of this Agreement then, at the ¡option of the Party of the First Part, this Agreement shall cease and terminate and, in that event, the Party of the First Part shall have the right to take any action or institute any and all proceedings which might have been taken or instituted if this Agreement had not been entered into.
6. That the Party of the First Part agrees that she shall on the first day of the months of February, May, August and November, by letter addressed. *877 to the Party of the Second Part at 290 Reynolds Arcade Building, Rochester, New York, set forth in such letter the whereabouts of said child by giving the address, name of street, name of city and state where the child is currently residing, and that failure to furnish such information as aforesaid shall constitute a valid reason for the Party of the Second Part to omit any and all monthly payments then due and owing until such time as said information is furnished to the Party of the Second Part.
On January 3, 1964 the petitioner appeared before this court accompanied by her attorney, Sidney B. Schatkin, Esq., and submitted a petition praying for the approval of said agreement or compromise. She submitted proof of service of the petition on the Commissioner of Welfare of the City of New York; and she also submitted the original of said agreement and a proposed order approving the same. Sol Cooperman, Esq., Assistant Corporation Counsel, appeared for the Commissioner of Welfare but he did not interpose any objection to the approval of the agreement. The petition alleged, among other things, that the child in question, a girl, had been born on July 4, 1963.
Thereupon, a hearing was held on the petition asking for approval of the agreement, and in urging the approval of the agreement the attorney for the petitioner, Mr. Schatkin, stated to the court, among other things, that despite the agreement, “He [the respondent] still denied paternity * * * I want to say this settlement is of utmost advantage to the petitioner. She has a man [the respondent] who is going to contribute. The man has agreed to contribute $100.00 a month, in writing here, until the child is twenty-one. He is paying her $500.00 for certain expenses up to today’s date. This lady is employed by the Department of State as an Interpreter. His earnings are substantial, she told me; and I say this in front of you [the petitioner]; if this [the agreement or compromise] is disapproved, she will not come to court and try the case * * * If this case did go to trial, she would not be able to establish a prima facie case. There is an act of intercourse alleged, no admission, nothing else, but he still is ready to pay her $100.00 a month ”. Whereupon the court approved the agreement and signed the order submitted by the petitioner.
Thereafter, more than two years and three months after the approval of said agreement, and more than two years and nine months after the birth of the child, and on or about the 20th day of April, 1966, the petitioner filed in this court a new paternity petition against the respondent involving the same child. The allegations of the second petition were substantially the same as in the first except that the second petition had the added allegation of the birth of the child out of wedlock on the *878 fourth day of July, 1963, and that respondent was the father of the child and had acknowledged paternity by furnishing support; and then follows the usual prayer for a declaration of paternity, for an order of support, and such other and further relief as was appropriate.
There was no reference to the aforesaid agreement or compromise in the new petition, nor any allegation to the effect that the respondent had failed to live up to his obligations under the agreement. The respondent moved to dismiss the second petition upon two grounds: first, that said agreement and the performance thereof by the respondent were a complete bar to the new petition, under section 516 of the Family Court Act; and, second, that the new petition was barred by the Statute of Limitations, section 517 of the Family Court Act, since the new petition had been brought after the lapse of more than two years from the birth of the child, and that neither the aforesaid agreement or compromise nor the payments made by respondent thereunder did constitute an acknowledgment of paternity under section 517 of the Family Court Act.
The said motion to dismiss the new paternity petition came to be heard before Hon. Saul Moskokf, a Judge of this court, who, after an exhaustive study of the issues and the law, ruled that the agreement did not bar the new petition since subdivision (c) of section 516 of the Family Court Act bars only remedies of the mother or the child for the support and education of the child but said nothing about barring an adjudication of paternity; but the learned Judge further ruled that the new petition was barred by the Statute of Limitations because neither the agreement or compromise nor the payments made thereunder by respondent did constitute an acknowledgment of paternity under section 517 of the Family Court Act, since the respondent had denied paternity at all times, and more particularly in the agreement itself. The learned Judge granted the motion and dismissed the new petition (Matter of ABC v. XYZ, 50 Misc 2d 792).
Encouraged apparently by the holding of Judge Mosicoit that the right to a declaration of paternity was not barred by the agreement or compromise, and with the apparent intention of trying to avoid the Statute of Limitations, petitioner made the motion now before the court to set aside the dismissal of the first paternity petition and to set the case down for a trial of the issue of paternity.
It should be noted that the Statute of Limitations (Family Ct. Act, § 517, subds. [a] and [b]), provides as follows:
*879 “ § 517. Time for instituting proceedings.
“ (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing support.
“ (b) If the petitioner is a public welfare official, the proceeding may be originated not more than ten years after the birth of the child.”
And since the first proceeding was instituted during the pregnancy of the mother, it was timely commenced. If petitioner’s motion were granted and the case put down for a trial, the Statute of Limitations would not be applicable. Obviously, that is what petitioner is seeking. This brings us to a consideration of the two motions before the court.
Let us take the petitioner’s motion first. The arguments advanced in favor of her motion can be summarized as follows: Petitioner claims: (1) that she did not waive, withdraw, or abandon her right to an adjudication of the issue of paternity when the agreement or compromise was executed by the parties and approved by the court, and she cites in support of her argument Judge Moskoit’s decision mentioned above; (2) that the court had no power to dismiss the first petition without a hearing on the merits and that the order of dismissal was void and of no effect and, therefore, the paternity proceeding is still pending and the issue of paternity should be set down for trial; (3) that since the court lacks power to dismiss the petition without a hearing on the merits, the making of the order of dismissal was a mistake or irregularity which the court should correct under CPLR, 2001 and CPLR 5015; and (4) that petitioner has an absolute right to a hearing to determine the paternity of the child regardless of the agreement or compromise approved by the court and regardless of the fact that respondent has complied therewith.
In opposition to the motion, respondent alleges as follows: (1) that petitioner’s motion does not show any factual or legal basis for the relief prayed for; (2) that when the agreement or compromise was executed by the parties and approved by the court, and the petition dismissed, any cause of action that petitioner had for a filiation order was extinguished and petitioner cannot revive it by her present motion; (3) that since the petition was dismissed and the case terminated, petitioner’s motion does not lie, since a motion can be made only on a *880 pending proceeding and there is no pending proceeding in this case; (4) that the petitioner is seeking by her motion the same relief that she was seeking by her second petition, which was dismissed by Judge Moskoff ; and that therefore the Statute of Limitations and res judicata are a complete bar to her present motion; (5) that notwithstanding Judge Moskoff’s decision, respondent still insists that there is no residuary cause of action that could survive the compromise agreement, since a cause of action for a filiation order and support of a child is one, single and not divisible, and petitioner settled such cause of action in its entirety by the compromise agreement; and (6) that a filiation proceeding did not exist at common law and is solely a creature of the statute, and that the statute being in derogation of the common law, should be strictly construed; that the statute did not create a cause of action for a filiation order separate and apart from a cause of action for a filiation order to get support for the child, which has already been provided by the agreement; that the fact that the statute is silent about a cause of action solely for the purpose of adjudicating paternity and does not expressly prohibit it does not mean that the statute created such an action.
As we go further into the merits of petitioner’s motion, we find that the order approving the agreement or compromise has a provision reading as follows: “ Ordered, that the petition in this proceeding heretofore filed in this court on or about the 7th day of December, 1962, be dismissed without prejudice and the bench warrant issued thereon vacated.”
This is precisely the order of dismissal against which petitioner’s motion is directed; this is the order that she is asking the court to vacate; this is the order she now claims the court had no power to make. But petitioner forgot that this is the order that she herself, through her own attorney, submitted to the court for signature, which prompts the following question: Can she now attack the order that she applied for, her own order! Can she be heard to complain about it!
But since petitioner is asking relief from an order, CPLR 5015, which deals with applications for relief from a judgment or order, is controlling (Family Ct. Act, § 165). This rule provides five grounds upon which such a motion can be made, but petitioner utterly failed to comply with any of the grounds. There is no allegation in her moving papers of any excusable default, nor of any fraud, misrepresentation, duress, or other misconduct of any adverse party. There is no question of newly discovered evidence.
*881 So that the only possible ground that is left for the petitioner under said CPLR 5015 is the alleged lack of power of the court to enter the order of dismissal, which would be covered by paragraph 4 of subdivision (a) of said rule. But this contention is without merit and must be rejected. In the first place, the order is not void. The court had jurisdiction of the subject matter and of the parties when the order was made, and there being nothing in the statute or in the rules to the contrary, the order must be held to be valid until set aside by the court or reversed on appeal.
In the second place, the order that petitioner is attacking is the very same order that she submitted for signature to the court; it is not an order entered on the court’s own motion or on respondent’s motion, but one entered on petitioner’s own motion and is part of the settlement of the case. She has benefited from the order up to now; indeed, she must have received from respondent about $3,400 for the support and education of the child, plus $500 for her lying-in expenses, a total of $3,900. Can she be allowed to attack said order now? I do not think so. It is elemental that a party who invokes the jurisdiction of the court is precluded from attacking its jurisdiction. The following cases illustrate the application of the doctrine: Mutchler Chem. Co. v. Lichtenstein (164 N. Y. S. 2d 158) ; Melchers v. Bertolido (118 Misc. 196); Krause v. Krause (282 N. Y. 355); Apex Binding Corp. v. Relkin (198 Misc. 381) ; (cf. 21 C. J. S., Courts, §§ 108, 109, pp. 161, 163).
In the third place, the fact that the Family Court Act only provides that the court shall make an order of filiation if it finds that respondent is the father of the child (Family Ct. Act, § 542) and shall dismiss the petition if the court finds that respondent is not the father (Family Cfc. Act, § 541), and does not provide what the court should do with the petition when the case is settled (Family Ct. Act, § 516), does not necessarily mean that the court does not have the power to dismiss the petition. For since the Family Court has original and exclusive jurisdiction in paternity cases, subject only to review by the Appellate Division (N. Y. Const., art. VI, § 13, subd. b; Family Ct. Act, §§ 115, 511, 1011), it is reasonable to assume that in this area it is vested, in matters of procedure, and I repeat and emphasize the phrase, in matters of procedure as distinguished from matters of substantive law, with all the powers that are inherently necessary to handle such cases. It certainly should have the power to dismiss a petition, without a hearing, when there was no necessity for a hearing since the *882 case was settled. (Harlem Metal Corp. v. Segal, 167 Misc. 321; Scheuer Bldg. Corp. v. Krull, 142 Misc. 189; Great Woodworking Co. v. Walley, 135 Misc. 213; 21 C. J. S., Courts, §§ 87, 88, p. 135 et seq.)
Further, the Family Court Act does not pretend to control or regulate every action of the court in matters of procedure. That is the reason why the statute (Family Ct. Act, § 165) specifically provides that where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed * * the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved ”, which I take to mean in accord with the procedure and practice of the Supreme Court in a similar case. In the same way that the Supreme Court can dismiss a complaint without a hearing on the merits as, for instance, in a personal injury action involving an infant, which has been settled and in which the plaintiff asks the court to dismiss the complaint without prejudice, the Family Court should be able to dismiss a paternity petition without a hearing upon approving a settlement of the case if petitioner asks that the petition be dismissed without prejudice. Since the dismissal of the proceeding is a matter of procedure, and since there is no rule or statute to the contrary, it must be held that the court has the power to dismiss the petition. It is inconceivable that the framers of the Constitution and the Legislature intended to create a court impotent to carry on the powers specifically granted to it.
But even assuming, but without admitting, that the court had no power to dismiss the petition without a hearing, that fact does not help petitioner in her motion. There is nothing in this record that justifies putting the case on the calendar for a hearing. For even if the order of dismissal were void, the compromise agreement settling the case is still valid and in full force and effect, and before she can prevail petitioner has to overcome the effect of the compromise agreement and of subdivision (c) of section 516 of the Family Court Act.
Paragraph 4 of the agreement provides: “4. The parties respectively consent to the entry by the Family Court of the State of New York of an order of approval in accordance with the terms of this Agreement; it being mutually understood and agreed that this Agreement shall be of no force or effect unless or until approved by that court or by another court of competent jurisdiction. ’ ’
*883 Section 516 of the Family Court Act dealing with the settlement of paternity proceedings, reads as follows:
“ § 516. Agreement or compromise.
“ (a) An agreement or compromise made by the mother or by some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise.
“ (b) No agreement or compromise under this section shall be approved until notice and opportunity to be heard are given to the public welfare official of the county, city or town where the mother resides or the child is found.
“ (c) The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child. ’ ’
Furthermore, without anything shown to the contrary, it is fair to assume that when the compromise agreement was signed, the parties intended to settle the whole controversy then existing between them and not merely a part of it; they intended to settle the controversy in its entirety. That is the way litigants operate; and when they want to settle only part of a claim, they are careful enough to insert in the agreement of settlement the necessary reservations to protect their interests. This is particularly true when the parties are represented by competent counsel, as in this ease. Here both parties were represented by attorneys who knew what they were doing; if they had intended to settle only part of the lawsuit, they would have put the necessary reservations in the agreement, in the same way they reserved petitioner’s right to terminate the agreement if the respondent defaulted. Paragraph 5 of the agreement reads as follows: “5. The parties mutually agree that if the Party of the Second Part shall default in the due performance of the terms of this Agreement then, at the option of the Party of the First Part, this Agreement shall cease and terminate and, in that event, the Party of the First Part shall have the right to take any action or institute any and all proceedings which might have been taken or instituted if this Agreement had not been entered into.”
There is no other reservation in the agreement of which the petitioner can avail herself.
Finally, from the fact that petitioner herself submitted the order dismissing her own petition, it can also be fairly assumed that the entry of the order of dismissal was part and parcel *884 of the deal or settlement that brought about the execution of the agreement, and that the dismissal of the petition was part of the consideration that induced respondent to settle the case and to enter into the agreement. In no other way can one explain the inclusion by the petitioner of the order of dismissal in the order approving the agreement.
True that if the petitioner had a cause of action for an order of filiation and for support of the child when the agreement was approved, such cause of action was not extinguished by the agreement; that is so because the agreement is not equivalent to a release or discharge of such action. For that is why care was taken to call the dismissal without prejudice. The purpose and effect of the agreement, in addition to providing support for the child, was to suspend, postpone, or hold in abeyance whatever right to prosecute such action the petitioner then had; such suspension, postponement or holding in abeyance being intended to last as long as respondent complied with the agreement. So long as he did comply with it, the agreement must be held to be a complete bar to such prosecution (Family Ct. Act, § 516, subd. [c]; Agreement, par. 4).
Such an agreement freely entered into and approved by the court is binding upon the parties as long as it remains in full force and effect and respondent complies with it. It could not be otherwise. For it would be a travesty on justice to allow petitioner to reap the benefits of the agreement for over 2 years and 10 months and then to permit her to turn around and disregard it without showing that respondent was in default. There is nothing in the moving papers showing that respondent has not complied with the agreement.
It is well to mention parenthetically that when this case was settled the petitioner was represented by Sidney B. Schatkin, Esq., who is generally considered an authority in paternity proceedings and whose book, “Disputed Paternity Proceedings ”, is regarded as a standard work on the subject. I do not think that petitioner could have had a more qualified attorney. Of course, it goes without saying that the petitioner’s present attorneys are entitled to commendation for the zeal they have displayed in protecting petitioner’s rights. Their ingenious arguments and their briefs are eloquent proof of it.
The court is mindful of the importance of an order of filiation for the child in question. She, the innocent victim, will be the one to lose the most by an adverse decision on the petitioner’s motion. If she does not get an order of filiation, she will not be able, among other things, to inherit from the respondent, to which she would be entitled under the recent amendment of *885 section 83-a of the Decedent Estate Law, in effect March 1,1966. But although the court’s sympathy is with the child, the court cannot be allowed to be swayed by sympathy. It has to take and apply the law as it finds it and do justice within the law. Any injustice that may result from the application of the law is up to the Legislature to cure.
Now as to respondent’s cross motion. In view of the conclusion reached by the court on petitioner’s motion, the cross motion becomes superfluous and academic. However, since respondent presses for a ruling on his motion, the court will pass only upon two points raised by it, namely, the alleged defective service of the motion papers and the legal sufficiency of said papers. There is no need to go further.
On the question of defective service, the court holds that any defect in the service was cured by the service on respondent of the order to show cause of September 19, 1966, with copies of the motion papers, and by respondent’s appearance by his attorney at the second argument of the motion. As to the legal sufficiency of petitioner’s motion papers, the court finds that the petitioner failed to allege sufficient facts to warrant the relief prayed for, and therefore the papers were insufficient in law.
Therefore, for the reasons set forth in this opinion, the motions are disposed of as follows: Petitioner’s motion to
vacate the dismissal of the petition and to set the ease down for trial on the question of paternity is denied, but without prejudice to renew if and when respondent fails to live up to his obligations under the agreement or compromise.
Respondent’s motion is granted, but with leave to the petitioner to renew if and when respondent fails to live up to his obligations under the agreement or compromise.