OPINION OF THE COURT
W. Denis Donovan, J.
A motion is made by defendant to dismiss the complaint based upon various grounds under CPLR 3211 (a). Being a declaratory judgment action, declaration rather than dis *785 missal would be appropriate (Sweeney v Cannon, 30 NY2d 633) and therefore dismissal, as such, is denied. A full submission has been received and a cross motion by plaintiff specifically seeks declaration. The cross motion is granted to the extent a declaration of the rights of the parties will be made. In this connection, plaintiff has attacked the constitutionality of section 516 of the Family Court Act and properly notified the Attorney-General’s office which has declined to intervene.
Family Court Act, under article 5 ("Paternity Proceedings”), § 516 provides that an agreement for the support of an out-of-wedlock child and the mother, or either of them, is binding upon them only when the court, determining adequate provision has been made, approves such agreement; such approval can be given only when notice and opportunity to be heard is given to the local welfare official. Subdivision (c) of the section then states: "The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child.”
Some background is necessary. Plaintiff commenced a paternity proceeding against defendant in Nassau County Family Court in late March 1982. The infant plaintiff had been born on March 5th of that year. After a denial by defendant and preparation for a contested hearing, both parties with their attorneys, resolved the matter on October 27, 1982 and executed a written agreement pursuant to section 516 and a collateral trust agreement. In the main agreement, defendant admitted paternity and committed himself to pay $3,500 for plaintiff’s counsel fees and blood test expenses and the sum of $216.67 per month (calculated at $50 a week) and to establish a trust fund for the child in the amount of $20,000. Under the terms of the trust agreement, the interest from the corpus was to be utilized by defendant to subsidize the monthly support payments with the corpus to be given over to the child when he attained 21 years or, if the child did not survive, to revert to the defendant; if defendant died during the child’s infancy, the plaintiff herself would succeed as trustee. The main agreement further recited the parties’ desire to resolve the dispute and both agreements bear numerous handwritten and initialed refinements. The parties’ signatures are notarized. On that same day, the Family Court Judge, in compliance with section 516, signed an order which approved the paternity agreement, recited the parties’ consent to the entry of the order of support in accordance with the terms of the agreements and determined that the agreements *786 made adequate provision for the support and education of the child. The Judge additionally ordered defendant to pay $1,700 for the child’s support from the time of birth to the date of the agreement, besides reciting the $3,000 for the mother’s counsel fees and $500 for the blood tests. Neither the agreements nor order make any provision for future modification. In fact, the order concludes by declaring that it bars any and all other remedies of the plaintiff or of the child for support and education.
The plaintiff mother and child now live in the State of New Jersey and the defendant father now resides in Westchester County. It is uncontroverted that he has faithfully performed under the terms of the agreement and that he has consciously chosen to have no contact whatsoever with the child.
In December 1989, plaintiff returned to Nassau County Family Court and filed a petition seeking to set aside the agreements and the order on grounds that they were unjust, unfair, and the product of coercion, overreaching and taint by virtue of her debilitation at the time. She sought a declaration of nullity ab initia asserting deprivation of her rights and the child’s procedural due process rights; she simultaneously sought reformation of the trust and an accounting of trust earnings. Her petition was heard by a Hearing Examiner who, upon consent, treated the application as a motion under CPLR 5015 (“Relief from judgment or order”) and rendered a decision and accompanying order on February 21,1990. In holding that none of the grounds under CPLR 5015 properly existed, the Hearing Examiner concluded that there was little power to review or affect the prior support order and additionally held that there was no evidence of physical or mental disability on plaintiff’s part at the time of the agreement. This decision and the order were entered on March 8, 1990. No appeal to, or rehearing by, a Family Court Judge or any forum was ever sought by plaintiff from the order. This declaratory action in Westchester County then ensued.
The medley of relief with respect to the section 516 order rests upon two prongs which are the plaintiff’s primary points of attack, i.e., the unconstitutionality of Family Court Act § 516 based upon claim of lack of equal protection between in- and out-of-wedlock children, and the further claim that this particular order is inadequate for the minimal support needs of this or any other child. To whatever extent the plaintiff claims that the 1982 agreements and order were the products of duress or disability, the court would declare that such claim *787 is not cognizable due to res judicata principles based on the Family Court Hearing Examiner’s findings to the contrary only one year ago.
The constitutionality of Family Court Act § 516 is attacked on the basis of the recent and rapid evolution of the genetic sciences which can now more easily and clearly establish paternity than was possible in 1982. However, the constitutionality of the statute in this present day is not the immediate issue before this court and any present day infirmity of the statute based on evolving science given plaintiffs lack of current standing, is and must be left to the State Legislature. Rather, section 516 should be viewed in the scientific light of 1982 in assessing whether or not it then passed constitutional muster. In this regard the court feels bound by the proximate holding in 1979 of the New York State Court of Appeals in Bacon v Bacon (46 NY2d 477), which was in turn based on then recent holdings by the United States Supreme Court in Lalli v Lalli (439 US 259 [1978], affg 43 NY2d 65) and Trimble v Gordon (430 US 762 [1977]). In these latter cases, the United States Supreme Court set a standard of constitutional review in dealing with the statutory rights of illegitimates as contrasted with the common-law and statutory rights of legitimates. This test, since referred to as one of "heightened scrutiny”, was used to measure the equal protection requirement of such State statutes. It was higher than the "rational basis” test previously used with respect to illegitimates as a class but was something less than the "strict scrutiny” test applied in race discrimination cases and statutes.
This "heightened scrutiny” test was thus applied by the Court of Appeals in Bacon (supra) on a constitutional challenge to the very statute now questioned by plaintiff, i.e., Family Court Act § 516, and the statute was held constitutional. The court stated:
"[A]gainst this standard, section 516 is unquestionably valid.
"At least two important and legitimate ends are fostered by the challenged legislation. Initially, the statute encourages putative fathers to settle paternity claims, thereby reducing the necessity for legal proceedings. Certainty as to the father’s future obligation is achieved by affording the settlement agreement binding effect. Yet, the interests of the child and mother are protected by the requirement that the agreement be judicially reviewed and approved. Moreover, since the statute does not mandate or prohibit the inclusion of any *788 particular term in the contract, the parties are free to make the agreement modifiable and thus provide for unforeseen contingencies.
"More important, the challenged statute helps to ensure that the child will not be without support from his father. Paternity proceedings have traditionally involved complex and difficult problems of proof, and uncertainty as to the outcome is ever present (see, e.g., Trimble v Gordon, supra, at p 771; Gomez v Perez, 409 US 535, 538). By furnishing an incentive to settle, the statute serves to prevent the illegitimate child’s support from becoming lost in the intricacies of the adjudicatory process. The statute is thus related, in a substantial respect, to permissible and salutary governmental interests and represents a balanced approach to the sensitive problem it addresses.” (Bacon v Bacon, supra, at 480 [emphasis added].)
This court is aware that shortly before Bacon (supra), then Family Court Judge Dembitz, in Matter of Shan F. v Francis F. (88 Misc 2d 165 [1976]), held the statute to be unconstitutional in instances where paternity was clearly or already established since it deprived out-of-wedlock children of the equal protection of modifiable support based on increased needs that in-wedlock children often enjoyed. Even assuming the Shan F. holding was not undone by Bacon, the discerning factor in Shan F., the clear establishment or concession of paternity, was nowhere present in this case where defendant had denied paternity up to the agreements.
Plaintiff nevertheless renews the attack on equal protection grounds based upon the same rationale regarding lack of modification.* Her main rallying point is the later Court of Appeals holding in Matter of Brescia v Fitts (56 NY2d 132 [1982]), where it was essentially held that, notwithstanding a valid and incorporated separation agreement providing child support terms, a court could order a higher amount than that agreed upon where the fundamental needs of the child or children were not being met under the terms of the agreements.
As the author of the nisi prius decision in Brescia (supra), which rationale the Court of Appeals ultimately approved, this court is especially aware of the inherent injustice which can be visited upon children by the self-concerned or short *789 sighted acts of parents. Were this court free to view the agreements before it without restraint, it would undoubtedly find them to be inadequate in today’s economy. However, the court would be negligent in its duty if it did not also observe that more than support was being bargained by the parties in 1982. Plaintiff relieved herself of the harrowing task of testifying in hope of establishing paternity and was assured of an admission of paternity and support. He, on the other hand, waived his right to contest the charge in exchange for a clear, definitive and immutable 20-year obligation which, in light of the Family Court approval, must be presumed reasonable. This court must additionally heed the constitutional protection against interference with contractual rights, more so in light of the judicial imprimatur of the order reflecting these contractual rights. Plaintiff and the child have received and enjoyed their benefits under the agreements for nearly 10 years now; defendant is entitled to receive and enjoy his.
The statutory scheme of section 516 forfends against precisely the type of later charge of inadequacy as is made here by requiring both court approval and notification to the local social service agency that may in the future be responsible for possibly unmet needs of the child. The order here specifically states such notice was given against plaintiff’s unsupported claim that it was not. This is not a happy state of events, but it is the legislatively mandated one and further legislative or appellate scrutiny is specifically invited.
As all of the declarations requested are dependent upon the question of validity of the section 516 agreements and Family Court order, this court, on the basis of the above rationale, is compelled to declare that:
Section 516 of the Family Court Act, as extant and applied between the parties in 1982, is deemed constitutional and, accordingly, the agreements and order are statutorily valid and bar plaintiff from:
(a) applying for increased support payments;
(b) having herself substituted as trustee of the irrevocable trust;
(c) obtaining medical insurance coverages for the child under defendant’s insurance policies, if any;
(d) invading the trust for moneys for the child’s religious education and Bar Mitzvah;
(e) having the court apply, in lieu of current support, the *790 recently enacted support requirements under the Child Support Standards Act;
(f) seeking an injunction against defendant from use of trust interest to subsidize the support payments;
(g) an accounting of trust proceeds as no misuse is shown.

 But note that the Court of Appeals does not preclude modification terms in Family Court Act § 516 agreements as indicated in Bacon v Bacon (46 NY2d 477, supra) above.