Elizabeth W. WILLIAMS, Plaintiff,

v.

Benjamin V. LAMBERT, Defendant.

No. 92 Civ. 8170 (JES).

United States District Court,
S.D. New York.

March 2, 1994.

Baer Marks & Upham (Allen E. Mayefsky, of counsel), New York City, for plaintiff.

Victoria Lea Smith, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

This action for a declaratory judgment arises out of a controversy over the enforceability of an agreement for the support of an illegitimate child (the "Support Agreement") entered into pursuant to § 516 of the New York Family Court Act by the plaintiff-mother and the defendant. Defendant in the above-captioned action moves for a stay pending resolution of *Lambert v. Williams*, No. 115655/93, a related action currently before the Supreme Court of the State of New York. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

On March 27, 1988, the plaintiff gave birth to a son. *See* Complaint ¶ 6. On or about April 2, 1990, the plaintiff instituted a paternity suit against the defendant in the Family Court of the State of New York. *See* Affidavit of Stanley S. Arkin, Esq., sworn to February 22, 1993 ("Arkin Aff."), Ex. A.

After neither an acknowledgement nor a judicial determination of paternity, the plaintiff and defendant entered into an agreement for the support of the illegitimate child (the

"Support Agreement") pursuant to N.Y.Fam. Ct. Act § 516.[1] *See* Arkin Aff. Ex. B.

Under the Support Agreement, the defendant agreed to pay the plaintiff $250,000 for the child's support, Arkin Aff. Ex. B ¶ 1, in exchange for the plaintiff's waiver, release, and discharge of the defendant from any and all claims in connection with the child's birth, support, education and maintenance. Arkin Aff. Ex. B. ¶ 2(d). The parties also agreed that, pursuant to N.Y.Fam.Ct. Act § 516(c), approval of the Support Agreement by the Court and the complete performance by the defendant of his obligations under the Agreement would bar all other remedies of the plaintiff or the child against the defendant for expenses relating to the child's birth, support, education and maintenance. Arkin Aff. Ex. B ¶ 6. The Agreement was approved by a Justice of the Family Court of the State of New York, who specifically found that the payment adequately provided for the child's support, education and maintenance. Arkin Aff. Ex. C.

On or about October 30, 1992, the defendant commenced an action against the plaintiff. in the Supreme Court of the State of New York for breach of the Support Agreement, intentional infliction of emotional distress, and a declaratory judgment with respect to his rights under the Agreement and New York Family Court Act § 516. Arkin Aff. Ex. D. Shortly thereafter, on or about November 9, 1992, the plaintiff commenced this action (the "federal court action") for a judgment declaring N.Y.Fam.Ct. Act § 516 unconstitutional under the Equal Protection clause of the 14th Amendment to the United States Constitution because § 516, as it has previously been construed by the New York Court of Appeals, *see Bacon v. Bacon,* 46 N.Y.2d 477, 414 N.Y.S.2d 307, 386 N.E.2d 1327 (1979), constitutes an impermissible discrimination between legitimate children, who

may seek to modify child support agreements, and illegitimate children, who may not. *See* Complaint.

The defendant's state court action was removed to this Court, *see* Notice of Removal filed November 23, 1992, and voluntarily dismissed without prejudice on June 24, 1993. *See* Stipulation and Order dated June 24, 1993. At or about the same time that the removed action was dismissed, the defendant filed another action in the Supreme Court of the State and County of New York (the "state court action"), in which he requested enforcement of the § 516 Support Agreement and damages for a breach thereof and intentional infliction of distress. *See* Affidavit of Victoria Lea Smith, Esq., sworn to September 13, 1993 ("Smith Aff."), App. 1. Plaintiff answered the state action complaint on August 15, 1993, and counterclaimed for a child support order and a judgment declaring that § 516 violates the Equal Protection clause of the 14th Amendment. Smith Aff. App. 2.

## DISCUSSION

■ While the federal courts are generally required to exercise their power to resolve disputes properly within their jurisdiction, *see New Orleans Pub. Serv. Inc. v. Council of New Orleans,* 491 U.S. 350, 358, 109 S.Ct. 2506, 2512, 105 L.Ed.2d 298 (1989), under certain circumstances, for reasons of federal-state comity, federal courts may and should abstain from deciding certain claims. First, under *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ("*Pullman* abstention"), a federal court should avoid deciding an issue of federal constitutional law where affording a state court the opportunity to construe the state law in the first instance may obviate the need

---

1.  N.Y.Fam.Ct. Act § 516 provides:
    (a) An agreement or compromise made by the mother or by some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise.
    (b) No agreement or compromise under this section shall be approved until notice and op-

portunity to be heard are given to the public welfare official of the county, city or town where the mother resides or the child is found.
(c) The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child.
New York Family Court Act § 512 specifically defines "mother" as "mother of a child born out of wedlock," *id.* § 512(c) and "child" as "child born out of wedlock," *id.* § 512(b).

for a federal court to pass upon the constitutionality of a state statute. Second, under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (*"Burford* abstention"), a federal court should dismiss or remand an action involving difficult questions of state law where federal intervention would unnecessarily conflict with the administration by a state of its own affairs. Third, under *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*"Colorado River* abstention"), a federal court to avoid duplicative litigation may stay an action when there is a concurrent, separate action pending in the state court that raises the same or substantially the same issues. Finally, under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (" abstention"), in the absence of bad faith, fraud, or irreparable harm, a federal court must abstain from enjoining ongoing state criminal proceedings.[2]

■ There are several reasons why *Pullman* abstention is particularly appropriate here. First, although the New York Court of Appeals rejected an equal protection challenge to § 516 in 1979 in *Bacon, supra,* 414 N.Y.S.2d at 307, 386 N.E.2d at 1327, that decision was rendered nearly ten years before the United States Supreme Court, in *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), invalidated a Pennsylvania statute of limitations for impermissibly discriminating between children on the basis of legitimacy. In that case, the Supreme Court concluded that because "increasingly sophisticated tests for genetic markers permit the exclusion of over 99 per cent of those who might be accused of paternity," *id.* at 465, 108 S.Ct. at 1916, Pennsylvania's rationale for limiting the time within which paternity and support actions should be brought on behalf of illegitimate children, *i.e.,* the state's interest in avoiding stale or fraudulent claims, was insufficient to satisfy the Supreme Court's "intermediate scrutiny" analysis. *Id.* at 465, 108 S.Ct. at 1916. Whether the recent availability of such tests similarly undermines the rationale for § 516 espoused in 1979 in *Bacon, i.e.,* the state's interest in settling support claims where paternity is uncertain, is now unclear. Thus, the first requisite for *Pullman* abstention has been met. *See McRedmond v. Wilson,* 533 F.2d 757, at 761 (2d Cir.1976).

Moreover, the second and third requisites to *Pullman* abstention, as set forth in *McRedmond v. Wilson, supra,* 533 F.2d at 761, also exist, *i.e.,* the constitutional issue depends on the interpretation of the state law and the state law must be susceptible to an interpretation that would avoid or modify the federal constitutional issue, exist. This is especially true since, although the lower state courts have followed *Bacon* in rejecting equal protection challenges to § 516 even after the Supreme Court's decision in *Clark v. Jeter* in 1988, *see Daniel J.G. v. Michael M.,* 150 Misc.2d 784, 571 N.Y.S.2d 372, 374 (1991), the New York Court of Appeals has since held that the Commissioner of Social Services may seek an increase in support of an illegitimate child where a child is in need of public assistance and a filiation order has been entered. *See Commissioner of Social Servs. v. Ruben O.,* 80 N.Y.2d 409, 590 N.Y.S.2d 847, 605 N.E.2d 334 (1992).[3] Given

---

**2.** *Younger* abstention has in some instances been extended to some types of civil proceedings "when important state interests are involved." *Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (disciplinary proceeding against an attorney). *See also, Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil nuisance action by state to close theater that exhibits obscene films); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child custody proceeding); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil action by state to recover welfare payments wrongfully received); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceed-

ing for failure to obey court order in a private civil action).

**3.** In *Ruben O.,* the Court ruled that the acknowledged father's support obligation should be governed by the statutory scheme for parental support of illegitimate and legitimate children. *See* N.Y.Fam.Ct. Act §§ 545(1), 513, 413(1). This scheme permits modification of support orders whenever necessary to provide adequate support to the child in light of several factors, including, *inter alia,* the increased needs of the child due to special circumstances or to the additional activities of growing children, the increased cost of living, a loss of income or assets by a parent or a substantial improvement in the financial condition of a parent, and the current and prior life-

the improvement in the technology now available to establish paternity, relied on in *Jeter, supra,* 486 U.S. at 465, 108 S.Ct. at 1916, there is strong reason to believe that the New York Court of Appeals may afford similar relief from § 516 where paternity can be established by more reliable scientific methods. Moreover, it is clear that were the state to construe § 516 in the fashion described above, the constitutional question presented here would not have to be decided. *See County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

■ In sum, the Court finds that abstention will best further the interests of both federal-state comity and judicial economy. Since *Pullman* abstention requires a stay pending a decision in the state court action and the retention of jurisdiction, *see United States v. Michigan Nat'l Corp.* 419 U.S. 1, 4, 95 S.Ct. 10, 11, 42 L.Ed.2d 1 (1974), not a dismissal of the federal court action, *see Zwickler v. Koota,* 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 393 n. 4, 19 L.Ed.2d 444 (1967), this Court will retain jurisdiction until an authoritative state court ruling is obtained. Once that ruling has been obtained, the parties may return to this Court for a determination of any remaining federal constitutional questions. *England v. Louisiana State Bd. of Med. Examiners,* 375 U.S. 411, 415–17, 84 S.Ct. 461, 464–66, 11 L.Ed.2d 440 (1964).

### CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that this case be transferred to the Suspense Docket of this Court until March 1, 1995, with leave to either party to apply on five (5) days' notice for its restoration to trial calendar of this Court upon a final disposition in the state court action, and it is further

**ORDERED** that a Pre–Trial Conference shall be held on March 18, 1995 at 10:30 AM in Courtroom 705.

style of the child. *Brescia v. Fitts,* 56 N.Y.2d 132, 451 N.Y.S.2d 68, 71, 436 N.E.2d 518, 521 (1982).