Elizabeth W. WILLIAMS,
Plaintiff–Appellant,

v.

Benjamin V. LAMBERT,
Defendant–Appellee.

No. 327, Docket 94–7290.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1994.

Decided Feb. 1, 1995.

Allan E. Mayefsky, New York City (Norman M. Sheresky, Baer Marks & Upham, of counsel), for plaintiff-appellant.

Victoria Lea Smith, New York City, for defendant-appellee.

Before: OAKES, ALTIMARI and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge:

Elizabeth Williams ("Williams") appeals from an order of the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge,* staying her case pending the resolution of a concurrent state court proceeding. Williams filed this action seeking a declaratory judgment that Section 516 of the New York Family Court Act, N.Y.Fam.Ct.Act § 516 (McKinney 1983) ("Section 516") violates the Equal Protection Clause of the United States Constitution because it treats illegitimate children differently from those born in wedlock. The district court held that it was appropriate to abstain from deciding the case under the *Pullman* abstention doctrine, *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and stayed the case pending the resolution of the related state case. We vacate the stay and remand the case for further proceedings in the district court.

I. *Background*

Appellant Williams and Appellee Lambert had a brief sexual relationship in 1987. Nine months or so later, Williams gave birth to a son, Henry. Williams and Lambert were never married. In 1990, Williams sought child support from Lambert. Lambert consented to a DNA test which showed that there was a high probability that Lambert was Henry's father. Lambert and Williams entered into a support agreement pursuant to Section 516. Lambert paid Williams a one-time lump sum of $250,000 for Henry's support. At the same time, he explicitly denied paternity in the agreement. As required by Section 516, a social worker submitted an assessment of the agreement to a judge, and the judge approved the agreement.

Williams now alleges that at the time of the agreement Lambert misrepresented his financial condition and that he induced her to sign the agreement by resuming a sexual relationship with her during the negotiations and by promising to participate in Henry's upbringing. She also alleges that her support agreement is inadequate because the parties, their attorneys and the court failed to apply the standards for child support under the New York Child Support Standards Act, Section 413 of the New York Family Court Act, N.Y.Fam.Ct.Act § 413 (McKinney 1983), and Section 240 of the New York Domestic Relations Law, N.Y.Dom.Rel.Law § 240 (McKinney 1988). These provisions establish the standards used to evaluate the support agreements between parents of legitimate children, including the "best interests of the child" test. N.Y.Dom.Rel.Law § 240.

Under Section 516, however, Williams is prohibited from petitioning the New York state courts for a modification of the support agreement. Section 516 provides that once a support agreement for an illegitimate child is

approved by a judge and is fully performed, it may not be reexamined even if grounds for re-examination would exist for an agreement entered into between the parents of legitimate children.[1] A support agreement between the parents of a legitimate child, on the other hand, is subject to future scrutiny by a court in light of its adequacy in meeting the best interests of the child, whether it was the product of fraud or overreaching, and whether changed circumstances justify a modification of the agreement. *Brescia v. Fitts*, 56 N.Y.2d 132, 436 N.E.2d 518, 451 N.Y.S.2d 68 (1982). Williams filed this case seeking a declaratory judgment that this statutory scheme violates the equal protection rights of illegitimate children and their parents.

In 1992, before filing this action, Williams showed Lambert a draft of the complaint, purportedly to facilitate settlement discussions. Lambert, in response, commenced a preemptive action in New York State Supreme Court, New York County, on November 5, 1992, alleging breach of the support agreement and intentional infliction of emotional distress and seeking a declaratory judgment that Section 516 complies with the New York and United States constitutions. On November 10, 1992, Williams filed her complaint in this case in the Southern District of New York. Williams also removed the state court action to federal court, and it was consolidated with the federal action.

On February 22, 1993, Lambert moved to stay or dismiss the federal action and to remand the state action to state court. Williams cross-moved for summary judgment. The district court dismissed the state causes of action and gave Lambert leave to renew the state claims in state court without also pleading the federal constitutional claim, which the judge suggested was merely an anticipation of Williams's defense. On June 15, 1993, Lambert filed a new complaint in New York Supreme Court that pled only the state law causes of action and therefore could not be removed to federal court.

The motions for stay or dismissal and for summary judgment were then renewed. The district court granted Lambert's motion to stay the federal case pending resolution of the state action on the basis of *Pullman* abstention. It held that issues of state law needed to be resolved before the court could decide whether the statute was unconstitutional. 844 F.Supp. 963. Williams appealed.

## II. *Discussion*

### A. *Standing*

■ Although the district court opinion does not address the issue of standing, Lambert raised the issue in the district court and raises it again on appeal. Standing doctrine, an essential part of the Article III requirement of a case or controversy, requires that a party seeking to invoke the jurisdiction of a federal court demonstrate an "injury in fact." *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ At oral argument, Lambert argued that Williams was not injured because she could petition the New York courts for modification of the support agreement pursuant to Section 165(a) of the New York Family Court Act (McKinney 1983) ("Section 165(a)") and N.Y.Civ.Prac.L. & R. § 5015 (McKinney 1992) ("CPLR § 5015"). Section 165(a) provides that:

---

1. Section 516 provides:

(a) An agreement or compromise made by the mother or by some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise.

(b) No agreement or compromise under this section shall be approved until notice and op-

portunity to be heard are given to the public welfare official of the county, city or town where the mother resides or the child is found. (c) *The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child.*

N.Y.Fam.Ct.Act § 516 (McKinney 1983) (emphasis added). Section 512 of the Act defines "child" as "child born out of wedlock." N.Y.Fam.Ct.Act § 512 (McKinney 1983).

... [W]here the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved.

New York courts have construed this provision to allow parties in family court proceedings to move for relief pursuant to CPLR § 5015, which provides for relief from a court order "upon such terms as may be just," upon a showing of fraud, misrepresentation or misconduct by an adverse party.[2] *See, e.g., Pezner v. Schumeyer,* 133 Misc.2d 1018, 509 N.Y.S.2d 724 (Fam.Ct.1986).

■ Williams alleges in her complaint that at the time of the settlement negotiations, and at the time the state court approved her support agreement, she did not receive full financial disclosure from Lambert and that he fraudulently induced her to enter into the agreement by resuming a sexual relationship with her and by making false promises regarding his future role in raising their child. On the basis of these allegations, Williams can seek a modification of the agreement by making a motion pursuant to CPLR § 5015 for relief from the state court's order approving the support agreement.

Lambert also contends that Williams has not shown an "injury in fact" because she has not alleged a financial need for modification of the agreement and she has not shown that the agreement would be eligible for modification under the standards applied to support agreements for legitimate children.

Whether Williams has standing turns on how her injury is defined. If, as Lambert argues, Williams's injury consists of a loss of child support money, then she does not have standing because success in this case would not guarantee a remedy to her injury. She would still have to petition the state court for modification, and she might not be successful there.

Determining "injury in fact" is not always easy. We are guided in this inquiry by the Supreme Court's recent decision in *Northeastern Florida Chapter of Associated General Contractors v. Jacksonville,* —— U.S. ——, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). That case, like the one before us, involved an equal protection claim. The plaintiff was a trade association challenging the constitutionality of an ordinance which required that ten percent of the money spent on city contracts be set aside for minority- or female-owned businesses. —— U.S. at ——, 113 S.Ct. at 2299. The association, whose membership consisted largely of businesses that were not minority- or female-owned, alleged that many of its members would have bid on certain set-aside contracts if it were not for the restrictions imposed by the ordinance. *Id.* The court of appeals held that the association lacked standing because it had presented no evidence that any members would have actually obtained a contract if they had been allowed to compete. *Id.* —— U.S. at ——, 113 S.Ct. at 2300. The Supreme Court reversed. Relying in part on *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the Court held that the association's "injury in fact" was the contractors' "inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.* —— U.S. at ——, 113 S.Ct. at 2303.

The Court explained, "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* Instead, the member's injury is "the denial of equal treatment resulting from the imposition of the barrier." *Id.*

The Court's analysis of the contractor's "injury in fact" was grounded in the interest

---

**2.** CPLR § 5015(a) states in relevant part:

The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested per-

son with such notice as the court may direct, upon the ground of:

. . . . .

3. fraud, misrepresentation, or other mis-

protected by the Equal Protection Clause.[3] The reasoning applies with the same force to Williams's equal protection claim. The New York legislature has created a barrier which makes it more difficult for a parent of an illegitimate child to have a support agreement modified than it is for a parent of a child born in wedlock. Williams is injured by the denial of equal access to the modification process. Her injury, that is, is her inability to modify her support agreement on the same basis as a parent of a legitimate child, not her inability to modify the agreement at all. The fact that CPLR § 5015 provides her with some basis for modification of the agreement does not strip her of standing because a motion under § 5015 would not entitle her to the same modification procedures as parents of legitimate children. It would not give her the right, that is, to have her agreement reviewed under the standards for child support set out in the New York Child Support Standards Act, Section 413 of the New York Family Court Act, or Section 240 of the New York Domestic Relations Law.

Just as the contractors did not have to show that they would have obtained the contracts had they bid, Williams need not show that she could successfully modify the support agreement if she were given access to the modification procedure. She has standing to seek redress for her claim of a denial of equal access to the modification process.

### B. *Ripeness*

■ As with standing, the district court did not address ripeness in its opinion, but Lambert raised the issue in the district court and does so again on appeal. Lambert argues that Williams's claim is not ripe for adjudication because she has not yet made any affirmative attempt to modify the support agreement. He relies on the Court's holding in *Reno v. Catholic Social Services, Inc.,* ⸺ U.S. ⸺, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), that the claims of illegal aliens' challenging Immigration and Naturalization Service temporary-resident regulations as contrary to the statute under which

they were promulgated were not ripe. This was true, the Court held, because a "class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him." *Id.* ⸺ U.S. at ⸺, 113 S.Ct. at 2496.

In *Associated General Contractors,* the Court found the trade association's challenge ripe even though the association's members had never attempted to bid on the minority set-aside contracts. The distinction between the cases, the *Catholic Social Services* Court reasoned, was that while the contractors had historically applied for similar contracts (supporting a finding they would have bid on the set-aside contracts absent the statutory restrictions), the aliens in *Catholic Social Services,* in contrast, had presented no evidence that they would have applied for temporary resident status in the absence of the INS regulations. *Catholic Social Servs.,* ⸺ U.S. at ⸺ n. 19, 113 S.Ct. at 2496 n. 19. We note, furthermore, that in *Catholic Social Services,* the deadline for the temporary resident applications had already passed. *Id.* ⸺, 113 S.Ct. at 2492. The class members claimed after the fact that they would have applied if they could have. *Id.*

■ These distinctions are relevant to the case before us. Unlike the alien class in *Catholic Social Services,* Williams could still file a petition in the New York state courts for a modification of her agreement. Such a gesture, however, would be a futile one, as her case would be dismissed summarily under the clear language of Section 516. *See, e.g., Avildsen v. Prystay,* 171 A.D.2d 13, 574 N.Y.S.2d 535 (1st Dep't 1991) (barring claim that support agreement was unconscionable); *Daniel J.G. v. Michael M.,* 150 Misc.2d 784, 789, 571 N.Y.S.2d 372 (Sup.Ct.1991) (barring claim that support agreement was inadequate). We will not require such a futile gesture as a prerequisite for adjudication in federal court. *Cf. International Bhd. of Teamsters v. United States,* 431 U.S. 324, 365–68, 97 S.Ct. 1843, 1869–71, 52 L.Ed.2d

---

conduct of an adverse party; ....

**3.** *See* Cass Sunstein, *Standing Injuries,* 1993 Sup. Ct.Rev. 37 (1993) (discussing how injury cannot

be determined without reference to applicable law).

396 (1977) (a person who never applied for a job is entitled to retroactive seniority if he can show that applying would have been a futile gesture because of the employer's pervasive discriminatory hiring practices).

### C. Abstention

■ The district court abstained from deciding the merits of this case and stayed the proceedings pending the outcome of the state court action. Orders to abstain are final under 28 U.S.C. § 1291 and are therefore appealable. *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 592 (2d Cir.1989) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)). Review of a district court's decision to stay a case on abstention grounds is limited to an abuse of discretion standard. *See Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 40 (2d Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987).

■ As a policy matter, district courts should abstain from hearing cases only under very unusual or exceptional circumstances. *United Fence*, 878 F.2d at 593; *West v. Village of Morrisville*, 728 F.2d 130, 135 (2d Cir.1984). The Supreme Court has written,

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

■ The district court relied on the *Pullman* abstention doctrine in its decision to stay Williams's claim pending the resolution of Lambert's state court case. The *Pullman* doctrine requires that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

■ Three basic conditions must be present to trigger *Pullman* abstention:

> First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.

*United Fence*, 878 F.2d at 594.

■ The district court held that the issue of state law in this case is uncertain because the New York Court of Appeals case that upheld the constitutionality of Section 516, *Bacon v. Bacon*, 46 N.Y.2d 477, 386 N.E.2d 1327, 414 N.Y.S.2d 307 (1979) (*per curiam*), was decided nearly ten years before *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), in which the Supreme Court concluded that in light of the new technology available to assist in determining paternity (DNA tests), a shorter statute of limitations for paternity suits brought by illegitimate children violated the Equal Protection Clause. The district court found it impossible to predict whether the Court of Appeals would revise its opinion in light of the technology now available.

The district court also found that the law is susceptible to an interpretation that would avoid or modify the constitutional issue. The district court pointed to the 4–2 decision, *Commissioner of Social Services v. Ruben O.*, 80 N.Y.2d 409, 605 N.E.2d 334, 590 N.Y.S.2d 847 (1992), to show that the state court could interpret Section 516 in a way that avoids the constitutional issue. In *Ruben O.*, the Court of Appeals held that where the parents of an illegitimate child have entered into a support agreement pursuant to Section 516, and the child later becomes a charge of the state, the Commissioner of Social Services is not bound by the original

support agreement and may seek child support based upon the child's needs. *Ruben O.*, 80 N.Y.2d at 414, 605 N.E.2d at 337, 590 N.Y.S.2d at 851.

 We cannot agree with the district court's reasoning. First, the "issue of state law" involved in our case that the district court found unresolved is an issue of both federal and New York state constitutional law. Federal courts do not need to wait for a state court's interpretation of federal constitutional law. "The jurisdictional sword that sustains federal rights should not be swiftly sheathed simply because a concurrent parallel attack has been mounted in the state courts." *United Fence*, 878 F.2d at 595. In addition, where the state might be willing to recognize under its constitution the same rights as the plaintiff claims under the federal Constitution, "it is now settled that when state and federal laws overlap in this fashion, plaintiffs are not precluded from choosing the federal forum." *McRedmond v. Wilson*, 533 F.2d 757, 763 (2d Cir.1976). Accordingly, the fact that Williams has counterclaimed in the state court action for a declaration that Section 516 violates the New York and federal constitutions does not provide an adequate ground for abstention in the federal court.

Second, the statute is clear on its face, and there is no indication that it has been interpreted in any unclear way. It has been used repeatedly in recent years to prevent mothers of illegitimate children from revising support agreements. *See supra*, Section II(B). *Ruben O.*, upon which the district court relies, is not to the contrary. *Ruben O.* was not an interpretation of Section 516 but instead was an interpretation of statutory sections governing the Commissioner. The Court of Appeals held that the Commissioner is not bound by agreements made under Section 516 because Sections 545(1), 513, 413(1) and 571 authorize the Commissioner to seek a child support award based upon the child's needs and the non-custodial parent's means, and Section 571 indicates that this power is not limited by Section 516. *Ruben O.*, 80 N.Y.2d at 415, 605 N.E.2d at 337, 590 N.Y.S.2d at 850.

Unlike the Commissioner in *Ruben O.*, Williams is bound by the terms of Section 516. She is within the class of people at whom the statute is directed—namely, parents of illegitimate children. No statutory construction could avoid that fact. Consequently, the district court's reliance on the *Pullman* abstention doctrine was inappropriate and constituted an abuse of discretion.

 The district court considered other types of abstention, and Lambert raises them as possible justifications for the district court's decision to abstain. They are equally inapplicable in this case. *Younger* abstention requires that in the absence of bad faith, fraud or irreparable harm, a federal court must abstain from enjoining ongoing state criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* abstention doctrine has been extended to prohibit federal courts from enjoining ongoing state civil proceedings that involve important state interests if the state forum provides the federal plaintiff a full and fair opportunity to pursue his or her claims. *See, e.g., Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10–17, 107 S.Ct. 1519, 1525–29, 95 L.Ed.2d 1 (1987); *see also City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir.1991) (noting that Younger abstention applies to state administrative proceedings). In this case, Williams has not asked that any state proceeding be enjoined. In the pending state case, Lambert alleges a breach of the support agreement and intentional infliction of emotional distress. Williams counterclaims for a declaration that Section 516 violated the New York and the United States Constitutions. A decision in Williams's favor in the federal case would have only the effect of mooting her counterclaim and of allowing her to initiate a separate case for modification of the support agreement. This situation does not present the issues of state and federal comity with which *Younger* is concerned. *See City of Hartford*, 942 F.2d at 136; *cf. Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (under *Younger* abstention, a federal court need not abstain from issuing declaratory relief where the state criminal prosecution has not yet been initiated).

■■■ *Burford* abstention, first articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), requires federal courts to decline to exercise jurisdiction over cases which involve difficult issues of state law bearing on policy problems of substantial public import. *Minot v. Eckardt–Minot,* 13 F.3d 590, 593 (2d Cir.1994) (remanding a child custody case in which plaintiff sought recognition of new tort theory under state law). In the instant case, the only claim in federal court is one for a declaratory judgment under the federal Constitution. *Burford* abstention is not applicable because the district court was not asked to adjudicate any facts or to fashion public policy on behalf of the state in a way that would unduly interfere with the efficient operation of an elaborate state regulatory scheme. *Burford,* 319 U.S. at 327, 332, 63 S.Ct. at 1104, 1106–07; *Meredith v. Winter Haven,* 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943); *Bethpage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1247 (2d Cir.1992); *City of Hartford,* 942 F.2d at 136–37.

■■■ The doctrine articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975) is also inapplicable. In that case, the Supreme Court held that, for reasons of wise judicial administration, the federal court should have dismissed the case involving water rights and allowed it to proceed in state court. *Id.* at 818, 96 S.Ct. at 1246–47. The Court held that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* The Court made no hard and fast rules guiding the determination of whether the exceptional circumstances exist which justify dismissal of the federal case, but instead advocated a balancing of certain factors. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983) (interpreting *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47). This circuit has interpreted this doctrine as requiring that the following factors be examined:

(1) assumption of jurisdiction over a *res;* (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights. *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989).

In this case, there is no evidence that exceptional circumstances exist. There is no allegation by either party that the federal forum is inconvenient. No harm will be caused by the piecemeal litigation—the constitutional issue can be cleanly decided in the federal court, and the state claims in the state court. Additionally, this federal action was commenced before the action currently pending in the state court, and the applicable law is federal constitutional law. Therefore, *Colorado River* provides no reason to stay this case.

■■■ Lastly, the general policy that federal courts should abstain from deciding cases that involve matrimonial and domestic relations issues is not applicable here. The matrimonial exception to diversity jurisdiction, as articulated in *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859), is still in effect today—federal courts will not exercise jurisdiction over cases on the subjects of divorce, alimony or the custody of children. *Ankenbrandt v. Richards,* ——— U.S. ———, ———–———, 112 S.Ct. 2206, 2214–15, 119 L.Ed.2d 468 (1992); *American Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990). *See also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509 (2d Cir.1973). However, the Court in *Ankenbrandt* held that the matrimonial exception to federal jurisdiction is not based on Article III of the Constitution but is instead an interpretation of the diversity statute, 28 U.S.C. § 1332. ——— U.S. at ———–———, 112 S.Ct. at 2213–14. It also found that the exception is very narrow. The Court stated that "[t]he *Barber* Court ... did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree," *id.* at ———, 112 S.Ct. at 2214, or a child custody decree. *Id.* at ———, 112 S.Ct. at 2215.

**1284**

This case does not involve such a decree, and it is before this Court on federal question jurisdiction, not diversity. Therefore, the matrimonial exception does not apply.

### III. *Conclusion*

Williams has standing to bring this declaratory judgment action, and her claim is ripe for adjudication. The district court abused its discretion by abstaining from the case. Therefore, the order of the district court staying the case is vacated, and the case is remanded to the district court for further proceedings.