**Elizabeth W. WILLIAMS, Plaintiff,**

v.

**Benjamin V. LAMBERT, Defendants.**

**No. 92 Civ. 8170 (JES).**

United States District Court,
S.D. New York.

Oct. 24, 1995.

Colton, Yamin & Sheresky, New York City (Allan E. Mayefsky, Norman M. Sheresky, of counsel), for plaintiff.

Victoria Lea Smith, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The facts underlying the instant action, summarized briefly herein, are the subject of two previous opinions. *See Williams v. Lambert,* 844 F.Supp. 963 (S.D.N.Y.1994), *vacated and remanded,* 46 F.3d 1275 (2d Cir.1995).

Following a brief intimate relationship with defendant Benjamin Lambert, plaintiff Elizabeth Williams gave birth to a son on March 27, 1988. *See Williams,* 46 F.3d at 1277; *Williams,* 844 F.Supp. at 963. In 1990, DNA test results indicated the high probability that Lambert is the father of the child. *Williams,* 46 F.3d at 1277. In April 1990, Williams commenced a paternity suit against Lambert in the Family Court of the State of New York. *Williams,* 844 F.Supp. at 963. Prior to any judicial determination regarding paternity, however, Lambert and Williams entered into a voluntary support agreement (the "Support Agreement") pursuant to section 516 of the New York Family Court Act.[1] *Id.* at 963–64.

Under the Support Agreement, Lambert agreed to pay Williams $250,000 for the support of the child. *See Williams,* 844 F.Supp. at 964. In return, Williams agreed to waive, release and discharge all claims in connection with the child's birth, support, education and maintenance. *Id.* The parties also agreed that, pursuant to section 516(c), the complete performance of the Support Agreement by Lambert would preclude all future remedies arising out of the child's birth, support, education and maintenance.[2] *Id.*

On October 30, 1992, Lambert commenced an action in the Supreme Court of the State of New York against Williams for, *inter alia,* breach of the Support Agreement and a declaratory judgment that the Support Agreement was enforceable and that its enforcement did not deprive Williams of equal protection of the laws merely because such an agreement would not bar modification claims by legitimate offspring. *See Brescia v. Fitts,* 56 N.Y.2d 132, 451 N.Y.S.2d 68, 436 N.E.2d 518 (1982). On November 9, 1992, Williams commenced the instant declaratory action against Lambert claiming that section 516 violates the equal protection rights of illegitimate children by denying them the right, afforded legitimate children, to modify child support agreements.

---

1. As required by statute, the Support Agreement was approved by the Family Court of the State of New York. *See Williams,* 844 F.Supp. at 964.

2. Section 516(c) provides: "The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child." N.Y.Fam.Ct. Act § 516(c) (McKinney 1983). Section 512 defines a "child" as a "child born out of wedlock." *Id.*

On November 23, 1992, Williams removed the state court action, which was then voluntarily dismissed without prejudice. On June 15, 1993, Lambert filed another action in the Supreme Court of the State of New York, which is presumably pending before that court.

On February 22, 1993, Lambert moved to either stay or dismiss the instant action upon various grounds. On March 23, 1993, Williams cross-moved for partial summary judgment arguing that section 516 is unconstitutional. By order dated June 16, 1993, the Court denied the respective motions in order to first address the applicability of the abstention doctrine.

By memorandum opinion and order dated March 2, 1994, the Court stayed the federal action under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Williams v. Lambert*, 844 F.Supp. 963 (S.D.N.Y.1994). The Court held that, in light of the United States Supreme Court ruling in *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), the New York Court of Appeals should be afforded an opportunity to reconsider its decision upholding the constitutionality of section 516 in *Bacon v. Bacon*, 46 N.Y.2d 477, 414 N.Y.S.2d 307, 386 N.E.2d 1327 (1979). On appeal, the Second Circuit vacated and remanded that holding. *See Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995).

Following the remand, the parties appeared for a pre-trial conference on May 16, 1995. At that conference, the Court indicated that it would consider a renewed motion for partial summary judgment by Williams based upon the papers previously submitted.[3]

## DISCUSSION

On remand, the only remaining issue is whether Williams, the mother of an illegitimate child, may seek additional support from Lambert. The Court holds that, notwith-

standing the decision in *Bacon, supra,* Williams's effort to modify the Support Agreement is not and cannot be barred by section 516(c) of the Family Court Act.

Over fifteen years ago, in *Bacon v. Bacon,* 46 N.Y.2d 477, 414 N.Y.S.2d 307, 386 N.E.2d 1327 (1979), the New York Court of Appeals concluded that because the plain language of section 516 discriminated between legitimate and illegitimate children, an intermediate level of scrutiny must be applied. *See Bacon,* 46 N.Y.2d at 479, 414 N.Y.S.2d 307, 386 N.E.2d 1327. The court recognized that statutory classifications premised upon illegitimacy must be " 'substantially related to permissible state interests,' " *Id.* at 479, 414 N.Y.S.2d 307, 386 N.E.2d 1327 (quoting *Lalli v. Lalli,* 439 U.S. 259, 259, 99 S.Ct. 518, 520, 58 L.Ed.2d 503 (1978)), but concluded that, in light of the "complex and difficult problems of proof" involved in paternity proceedings, section 516 furthered several important state interests. *Id.* The court also concluded that the statute was "related, in a substantial respect, to [these] permissible and salutary governmental interests" and upheld the constitutionality of section 516. *Id.*

Since *Bacon,* however, the United States Supreme Court has consistently struck down statutory classifications based upon illegitimacy. In *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), the Supreme Court held that the State of Texas could not constitutionally provide a one-year statute of limitations in which illegitimate children could establish paternity when such a short period of limitations was not applicable to legitimate offspring.[4] In *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), the Court held that a two-year period of limitations, although a small improvement over the one-year period involved in *Mills,* impermissibly limited the opportunity of illegitimate children to obtain support. Most recently, in *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), the Court struck down a Pennsylvania

---

**3.** The Court notes that both parties have fully briefed the constitutionality of section 516.

**4.** In *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the Supreme Court held that the State of Texas could not constitutionally

deprive illegitimate children the right to support from their natural fathers, a right afforded to legitimate children. *See Gomez,* 409 U.S. at 538, 93 S.Ct. at 875. In response to *Gomez,* the State of Texas enacted the legislation at issue in *Mills.*

statute which mandated that paternity suits be brought within six years of an illegitimate child's birth, while not imposing similar restrictions on legitimate children. In *Clark,* the Court also recognized that "increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who might be accused of paternity, regardless of the age of the minor." *Clark,* 486 U.S. at 465, 108 S.Ct. at 1916.

In view of these holdings, the Court has every basis to believe that the New York Court of Appeals would conclude that either section 516 is unconstitutional[5] or that it must be construed in such fashion as to permit an illegitimate child to seek modification of the Support Agreement at issue. This is especially true since that court has already construed similar facially discriminatory statutory classifications in a non-discriminatory manner, thereby preserving their constitutionality.

For example, in *People v. Liberta,* 64 N.Y.2d 152, 485 N.Y.S.2d 207, 474 N.E.2d 567 (1984), the New York Court of Appeals considered the constitutionality of rape and sodomy statutes. In *Liberta,* the defendant argued that the statutes proscribing rape in the first degree and sodomy in the first degree, which contain an exemption for marital sex, violated the Equal Protection Clause.[6] *See Liberta,* 64 N.Y.2d at 158, 485 N.Y.S.2d 207, 474 N.E.2d 567. The defendant also argued that the rape statute violated equal protection because it did not apply to females. *Id.*

At the outset, the New York Court of Appeals recognized that the plain language of the rape and sodomy statutes provides a marital exemption, *see Liberta,* 64 N.Y.2d at 159, 162, 485 N.Y.S.2d 207, 474 N.E.2d 567, and that only males could be convicted under the rape statute, *Id.* at 167, 485 N.Y.S.2d 207, 474 N.E.2d 567. However, the court also concluded that archaic notions concerning consent and marital rights did not provide a rational basis for distinguishing between marital rape and non-marital rape. *Id.* at 162–67, 485 N.Y.S.2d 207, 474 N.E.2d 567. The court further held that arguments about unwanted pregnancies and the unique medical, sociological and physiological problems of females did not support the gender distinction set forth in the rape statute. *Id.* at 167–70, 485 N.Y.S.2d 207, 474 N.E.2d 567. The court therefore held that the marital and gender exemptions were not constitutionally permissible if applied literally. *Id.* at 167, 170, 485 N.Y.S.2d 207, 474 N.E.2d 567.

However, despite having concluded that the facially discriminatory statutes were unconstitutionally underinclusive, the New York Court of Appeals did not strike down either statute. Instead, the court recognized that "[w]hen a statute is constitutionally defective because of underinclusion, a court may either strike the statute … or extend the coverage of the statute to those formerly excluded." *Liberta,* 64 N.Y.2d at 170, 485 N.Y.S.2d 207, 474 N.E.2d 567 (citations omitted). The court then proceeded to strike the marital exemption from the rape and sodomy statutes and the gender exemption from the rape statute, thereby maintaining the overall statutory scheme. *Id.* at 171–72, 485 N.Y.S.2d 207, 474 N.E.2d 567. It is significant that the decision of the New York Court of Appeals in that regard was subsequently found by the Second Circuit to be more generous than the Constitution required. *See Liberta v. Kelly,* 839 F.2d 77, 81–83 (2d Cir.1988).

---

5. Indeed; following the most recent pronouncement in *Clark,* the Supreme Court of Wisconsin reconsidered the constitutionality of a similar statutory classification, which denied illegitimate children the opportunity to seek additional support. *See Gerhardt v. Estate of Moore,* 150 Wis.2d 563, 441 N.W.2d 734 (1989). In *Gerhardt,* the court initially upheld the statutory classification, holding that it furthered the state's interest in promoting settlements and finality. *See Gerhardt v. Estate of Moore,* 139 Wis.2d 833, 407 N.W.2d 895 (1987). On certiorari, however, the United States Supreme Court remanded for further consideration in light of its decision in *Clark. Gerhardt,* 441 N.W.2d at 735. On remand, the Supreme Court of Wisconsin held that the statutory classification failed to bear a substantial relationship to the asserted state interests, thereby denying illegitimate children equal protection of the law. *Id.* at 739.

6. The statutes for rape in the first degree and sodomy in the first degree are set forth in the New York State Penal Code, at sections 130.35 and 130.50 respectively.

In view of the foregoing, the Court concludes that section 516, as interpreted in *Bacon*, cannot constitutionally bar Williams's effort to modify the Support Agreement and that the New York Court of Appeals, if presented with that issue, would also so hold. It follows that Williams's motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the Court concludes that section 516 does not preclude Williams from seeking to modify the Support Agreement and that Williams is therefore entitled to a declaratory judgment with regard to that issue.

It is **SO ORDERED.**